UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
**FILED**

OCT 0 5 2005

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-479-GWU

ROBERT THOMPSON,                         PLAINTIFF,

VS.                **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,          DEFENDANT.

\* \* \* \* \* \* \* \*

The plaintiff appeals an administrative decision to terminate Disability Insurance Benefits (DIB) benefits originally awarded in 1999. The case is currently before the Court on cross-motions for summary judgment.

### STANDARDS APPLICABLE TO TERMINATION DECISIONS

When the issue is the termination of benefits, the regulations establish the following eight-step test:

1. Is the beneficiary engaging in substantial gainful activity? If so, then the disability will be found to have ended. See 20 C.F.R. Section 404.1594(f)(1).

2. Provided the beneficiary is not engaged in substantial gainful activity, does the beneficiary have an impairment or combination of impairments which meet or equal the severity of impairments in the Listing? If so, then the disability must be found to continue. See 20 C.F.R. Section 404.1594(f)(2).

1

Thompson

3.  If the beneficiary does not equal a listing, then the question is whether there has been medical improvement (any decrease in the medical severity of one's impairments, as per 20 C.F.R. 404.1594(b)(1)).

4.  Provided medical improvement has occurred, then the question is whether this has produced an increase in the residual functional capacity. If the improvement is not related to the ability to perform work activities, then one proceeds to step 5. If the improvement is related work ability, then one proceeds to step 6. See 20 C.F.R. Section 404.1594(f)(4).

5.  Provided there has been no medical improvement or the improvement is not related to work ability, then one must decide whether an exception to the medical improvement standard will apply. If not, then a finding of continuing disability should be made. See 20 C.F.R. Section 404.1594(f)(5).

6.  If the medical improvement is found to be related to work ability or if an exception to the medical improvement standard applies, then one considers whether the current impairments in combination are severe. If so, then one proceeds to step 7; if not, the beneficiary is no longer considered disabled. See 20 C.F.R. Section 404.1594(f)(6).

7.  If the impairments are found to be severe, then one must assess the beneficiary's ability to engage in substantial gainful activity in accordance with 20 C.F.R. Sec. 404.1561. If found capable of performing past relevant work, then the disability will be found to have ended. Otherwise, one proceeds to step 8. See 20 C.F.R. Section 404.1594(f) (7).

8.  Provided the beneficiary cannot perform past relevant work, then one must assess the residual functional capacity and considering the age, education, and past work experience, determine whether other work can be performed. If so, then the beneficiary is no longer disabled. Otherwise, a finding of continuing disability should be made. See 20 C.F.R. Section 404.1594(f)(8).

The standard for judicial review is whether there is substantial evidence to

support the Secretary's decision that the plaintiff's condition has improved to the extent that he can perform substantial gainful activity. Casiano, Jr. v. Heckler, 746 F. 2d 1144 (6th Cir. 1984). The Court must determine from the record upon what conditions the claimant was awarded benefits, and whether there has been any improvement in these conditions. Id. at 1148.

## DISCUSSION

Although the plaintiff had originally mentioned musculoskeletal problems as his main source of disability back in 1998 (Tr. 130), he later added a reference to psychological problems (Tr. 140). The early record showed that a treating specialist had released him to return to his coal mining work in 1998 after a diskectomy (Tr. 189, 209A, 210),[1] whereas a one-time examiner diagnosed anxiety and depression (Tr. 214) which was said to impose all "seriously limited but not precluded" mental abilities (Tr. 219-220), a mental health specialist opined that the plaintiff was not able to relate or tolerate stress due to his mental limitations (Tr. 237) and a medical reviewer noted "marked" mental limitations (Tr. 302-304). Not surprisingly, when the agency determined to award benefits, no physical conditions were referenced, but instead an affective disorder was listed as the primary diagnosis and a somatoform disorder was listed as a secondary diagnosis on the Disability

---

[1]Another specialist precluded him from only heavy lifting and constant bending and stooping. (Tr. 243).

3

Determination and Transmittal form; the only report referred to on the form was the mental health specialist's report. (Tr. 62).

The agency now seeks to terminate the awarded benefits, based on a finding of medical improvement related to the ability to work as of October, 2001. (Tr. 19-20).

The administrative law judge (ALJ) notes that the original condition for which benefits were awarded (i.e., anxiety, depression, or a pain disorder) <u>have</u> medically improved. A new consultative mental health examiner indicated in August, 2001 that the plaintiff <u>had</u> the ability to address the stress of home activities and <u>could</u> show sustained concentration and persistence (Tr. 248). Thompson was characterized by the consultant as friendly, cooperative, oriented and with an intact memory. (Tr. 245). He told the examiner that he got along "OK with everyone." (Tr. 246). A medical reviewer felt there was no "severe" mental impairment. (Tr. 327). Thus, benefits could properly be terminated as no mental function restrictions were warranted as of 2001, in contrast to the disabling mental conditions present at the time benefits were awarded.

The Court must then turn to the question of whether the plaintiff's physical condition would disable Thompson, or at least warrant restrictions in excess of that given in the recent hypothetical question.

After the award of benefits but not quite at the proposed benefits cut off point

4

(i.e., November, 2000), the plaintiff saw Dr. Emily Rayes, a rehabilitation specialist at the University of Kentucky. Rayes took the plaintiff off narcotic pain medication and noted that while the plaintiff was not a viable candidate for heavy labor, he would benefit from retraining for other positions. (Tr. 240).

The plaintiff had been referred to this specialist by the facility in which Steven Spady and Werner Grentz practiced. (Tr. 41, 263). On many occasions, Thompson appears to have seen nurse practitioners at this clinic. One of the practitioners made it clear to the plaintiff that she "usually follow[ed] the plan of specialists." (Tr. 263). The plaintiff was supposed to return to Dr. Rayes, but evidently did not do so. (Tr. 261, 263). Thompson also told a nurse practitioner in June of 2001 that he had re-injured himself "lift[ing] a big piece of wood" while his house was being built (Tr. 260), something he repeated in September when he was reported to have said that "he has been building a house and reports associated pain with this" (Tr. 259).[2] None of the progress notes from December, 2001 to September, 2002 include much clinical detail other than references to "tenderness" or one occasion of decreased range of motion (Tr. 254-258).

Medical reviewers found the plaintiff capable of light level work with

---

[2]The plaintiff disputed this characterization of his activity, indicating that someone else was building the house, but the nurse practitioner's notes appear to suggest at least some activity on the part of the plaintiff. The ALJ listed his demeanor as a reason not to find him entirely credible.

Thompson

occasional postural restrictions only. (Tr. 316-325, 357-364).

The record does show a 2001 opinion from Dr. Spady and a 2004 opinion from Dr. Grentz which would render the plaintiff disabled. (Tr. 59-60). It does not appear that Spady himself examined the patient after January, 2001 (Tr. 253-262), months prior to the benefits cut off date, and thus his opinion could be said to be outside the critical period. Grentz only began to see the patient in December, 2002 and noted only tenderness as his finding then (Tr. 253).[3] Thus, this is one of the unusual situations when treating physicians' opinions were not worthy of binding weight.

For these reasons, as well as those cited in the defendant's brief at pp. 11-15 related to the assessment of pain and the Listing of Impairments Sections under 1.00, the decision is affirmed.

This the _5_ day of October, 2005.

G. WIX UNTHANK
SENIOR JUDGE

---

[3] The Clay County Medical Center notes from 2003 also contain few examples of clinical details. (Tr. 274-281).